May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project on behalf of Maria Lopez, and I'm going to seek to preserve two minutes for rebuttal. The agency erred in this case by determining that battery, at least under the context of Relief for Violence Against Women Act, requires a heightened level of violence. The immigration judge determined that... Well, let's assume that we agree that you're correct in that regard, what a battery is what a battery is. And so we buy into that. But as I understand the state of the record, the battery occurred, the abuse occurred when the children were young. A passage of how many years has gone by to the time that the petition was filed? What, 16 years or so? Not quite, but a good 10 plus years. A good 10 plus years. Actually, from the hearing, a little less than that, but 7 or 8 years. How old are the children now, by the way? I believe the oldest child is now 16. Well, I don't know. I mean, I looked at the facts. It looked like at the time of the filing of the petition, the oldest child, she was 16 when she had her second child. That's right. And she's now 31 or 32 or 33. But my question really goes to this, is does this statute, reading the statute, does it mean, because it talks about a battery in the past, is there any time period that one looks to, to determine whether or not there is a threat, a realistic threat of a battery on the child if in fact the mother is deported? The purpose of the statute, as I understand it, was not to leave in the country children who would be subjected to a remaining spouse's battery if in fact those batteries occurred sometime in the past. And my question to you is, what if they occurred, what if the children were of majority years? What if they were 18 or over? Does this law apply? And yes, it does. And for two points. And one, the federal legislation. So if they're 30 years of age and they were battered 28 years earlier and now the deportation process goes forward, the person is entitled to avail themselves of this statute. And that was one of the purposes of the statute. That is right. And that's because the Violence Against Women Act was trying to create a legal paradigm in which undocumented immigrants in this country didn't feel forced to remain in that abusive situation. Counsel, I have one question about your statutory interpretation in answer to Judge Breyer's question. I'm looking at, I'm bad with all these numbers, it's 1229B, subsection B, 2, which is where all these definitions occur. And it does not have a time limit except in the following sense. And this is what I want to ask you about it. The alien is, and I'm going to skip some words, the parent of a child of an alien who is or was a lawful permanent resident and the child has been battered, okay? And I read that to require that at the time of the decision, the battered person must still be a child. In other words, if the person is still under 18, they're still a child, even if they were battered when they were two or three. But if the mother is now 70 and the child is 50, there's biologically a child, but I didn't really understand Congress's use of child in this sense to mean just your offspring. And it is true that under the Immigration Nationality Act, a child is defined under 21. And so there's an argument that could be made. Right. I guess that's, to me, as I read the statute, the limitation on this definition, it doesn't seem to say, and it has to have been this week or last week or ongoing, but it to me suggests that at the time of the hearing, the person still has to be a minor who was subjected to the battery. Is that, in your view, an incorrect reading or a correct reading of the statute? I think there's certainly that's a reasonable interpretation of the statute. That's not a basis for the agency's decision. No, it isn't. And in this case, it wouldn't matter because there are children under this definition. I guess it just, you didn't say that in answer to Judge Breyer. You were saying, well, yeah, it doesn't matter. They can be 31. And I guess that's what I'm challenging. I don't see that in here. You're right that I don't need to make such an expansive defense of the position. But what I'd point out, for example, even in the Federal Register, they explicitly stated at 61F regulation, this was the introduction when they promulgated the regulation, quote, there is no limit on the time that may have elapsed since the last incident of qualifying abuse occurred. Which regulation are you looking at? This was the introduction. Let me get you the complete site. It was on page 13065 of, and I'll pull it up for you here in a second, of the. . . Well, if you can't find it now, just write it down and give it to the Deputy Clerk. I just understand the facts. The immigration law provides that anyone under the age of 21 is considered to be a child. And the offspring of the petitioner at the time of the hearing, both offspring were under the age of 21. Absolutely, and they still are. The petitioner, when she was 14 years old, joined together with the father of these children. That was in 1994. Within two years, she had her first child. So basically in 1996 is when the first child was born, although I don't have that information. I'm sorry. Maybe I misunderstood you. You're saying that these children today, or at least at the time of the hearing, were still children under the 21-year-and-younger definition? They were. They were, and they continue to be, even today. But certainly at the time of the hearing, they were. And part of the reason that it doesn't matter as far as in a more limited context, perhaps, whether the victim was abused just last week and they escaped or a longer time period ago, is that up until the enactment of violence against women, there was a clear paradigm where undocumented individuals were at the mercy of the abusive parent or spouse and didn't have an opportunity. I for one accept that argument. I mean, I understand that. I was just concerned about the open-ended nature of it, and we don't really have that in this case. Exactly. And going back to what's particularly striking about this case is that the agency purports to establish this new elaborate definition for battery. It would include not only a battery, but a requirement, at least for cases occurring in California, of an injury that requires medical treatment. And this wasn't done after careful consideration by a panel of the board creating precedent decision. It wasn't done after notice and rulemaking. Rather, it was an unpublished decision by the immigration judge that was then upheld in an unpublished decision by the board and simply defies the plain language of the statute requiring only battery and defies the guiding regulation. And likewise, defies this court's case law from Hernandez v. Ashcroft that says that any act of physical abuse is deemed to constitute domestic violence without further inquiry. And it's not just the striking of these two- and three-year-old toddlers with a stick, and certainly that's sufficient. But as the regulation makes clear, it has to be placed into context. The context, for example, of one memorable occasion when their father beat the three-year-old child repeatedly with a stick in front of his drunken friends. The context of a house that was dominated by an abusive father, including abuse targeted at the mother. All this evidence regarding incidents besides the actual physical abuse was not taken into account by the agency as required by the regulation. And so whether you're talking about the father out driving with the children when he's drunk or leaving the mother and children at home while he's spending all the money at bars and they don't have money for food or even at times for milk as she testified, as the immigration judge found her testimony to be credible, all this is evidence that should have been weighed in placing into context the father striking these children two- and three-years-old with a stick. So I gather that what you're asking us to do is to kind of strike through that earlier case, the unpublished case that the BIA relied upon, and make it clear that at least the facts of this case met this first test. And we send it back for the board or actually the IJ to consider the other four elements that need to be considered. Is that what you're saying? That is correct. Here the question is whether the record demonstrated battery or extreme cruelty, and that was just the first component that they reached. And because the agency erred in finding that there was not battery or extreme cruelty, they rejected the claim and never reached the other components. And so it would need to be remanded to address those other components. One other point that I think is important is the statute and even the BIA's decision view battery as separate from extreme cruelty as being alternatives. Neither the statute nor the BIA seems to require both. So if we were to agree with you on battery, would we even have to reach the issue of what constitutes extreme cruelty? No, in this case you would not. As you said, either qualifies. The court in Hernandez made that clear. And so regardless of which one, the court found that the agency erred in failing to recognize it would be sufficient. The other point that I'd like to quickly address is respondent arguments that the agency didn't err in failing to consider the abuse targeted at the mother because all we're concerned with is the abuse towards the children. But this argument fails to acknowledge, as was submitted in evidence in underlying proceedings and in the briefing, in a briefing by amicus, that any toddler witnessing abuse towards their mother is bound to have an impact on that child. There's at least a potential threat for injury, lasting developmental injury, emotional scarring, the devastating consequences of any child being placed in that situation. So one, they failed to take into account the potential impact on the child, and two, they failed to recognize that, again, this helps establish the full pattern of violence. And that's exactly what the regulation requires the adjudicator to do. If we agree with your definition of battery and that it was error for the immigration judge not to view battery in accordance with your definition, what is there left for the immigration judge to do that's subject to an issue of fact that hasn't been done? There's still, in order to qualify for this relief, there's still other prongs. For example, there's a demonstration that the applicant would suffer hardship upon being removed from the country, and they would have to go through those final hurdles to determine that, indeed, she qualified under all the forms. So they didn't ever analyze the good moral character, the physical presence, the extreme hardship, et cetera, factors, because they stopped by saying, So if we agree with you, all that happens is it goes back for an analysis of all the other factors, which may or may not result in relief, ultimately. That is correct. And that's as of today, as of the date of the new hearing? The agency is taking different approaches. At times it's gone back and just on the record that already exists determined that, well, we were wrong on this. The rest of the record demonstrates she meets those requirements and goes ahead and approves it. At other times they set it up for a new individual hearing. There's more testimony. So I can't definitively say what the process would be there. But if it's sent back, the extreme hardship is the same analysis that we hear all the time. People say we don't have jurisdiction unless there's a colorful claim, constitutional claim, because this is at the discretion of the Attorney General. We don't have jurisdiction. Is that the issue that your client would be facing on a remand? As to the other four elements? There are discretionary components that the court would not have jurisdictional review over. But the agency has never made any decision about any of those. That's correct. And so we don't have jurisdiction to consider them one way or another. Exactly. And I'll seek to preserve the last minute for rebuttal. Okay. Thank you. Thank you. We'll hear from Ms. Lopez-Wright. Tell us why it's not a battery. Good morning, Your Honors. Again, may it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. It is not a battery, Your Honor, as the term battery is commonly used, especially in the context of domestic violence. What standard do we use? The Supreme Court has given us the Taylor approach on some things. I'm not sure what the standard is here. What law do we use to determine whether a battery has occurred? Is it the law of the state where the people are living? Is it federal law on an Indian reservation? What are we looking at here? I think because this is an immigration statute and the statute leaves the definition of battery in extreme cruelty to the discretion and judgment of the immigration enforcement authorities, I believe the Court is required to grant deference, whatever that standard is. Here's my problem. I'm sorry. I was going to say, Donna, that's just one question. How has the agency defined battery? Well, it's a case-by-case analysis, Your Honor. But in this case, the definition of battery in extreme cruelty is in the regulations. Case-by-case? I mean, I've never heard of a standard like that in my life. I mean, the standard is for defining a battery, what happened in this case or what happened in Case A or Case B or Case C? That's the standard? No, in this book, Your Honor, the regulatory definition does exist. Okay. The application of that definition. That's what I wanted to talk to you about because it seems to me, looking at the BIA's decision, I'm particularly looking at AR4, which is the second page of their decision. It seems to me there's a complete disconnect between the regulatory definition and its application. And let me be more specific. At the top of the page, the BIA says, we're going to look at an analogous regulation in another context, which says that to be battered by or subject to extreme cruelty includes but is not limited to the following. And I'm going to leave out some words, but here's part of what the regulation says. Being the victim of any act of violence which results or threatens to result in physical or mental injury. Now, that's a very, very broad statement. But then in the discussion, the BIA below that doesn't apply that. It doesn't say was there an act of violence. It doesn't say did it result in any physical or mental injury or did it threaten to. Instead, it has all these things about whether there's medical treatment, whether there's lasting injury. That's not what the regulation requires. So I guess I just see a complete disconnect between the regulation and how the analysis goes after that. They just don't match in my view. I think what the Board of Immigration Appeals is doing in the paragraph following the language that you just quoted, Your Honor, is when it said we will adopt and affirm the immigration judge's determination that Ms. Lopez failed to meet her burden of establishing eligibility. And then it goes on to list those factors that the immigration judge discussed and found determinative. But that's where the disconnect comes because the immigration judge added to the regulatory definition a whole bunch of stuff from some irrelevant part of the California Code, which has absolutely nothing to do with immigration, has nothing to do with domestic violence battery. It just, and as you say, it has to be federal law anyway. So I guess what I'm saying is that, just speaking for myself, I have no difficulty with saying we have an analogous regulation and here's what it provides. But then they don't apply it. They apply all kinds of other stuff that the immigration judge added to that or departed from it. And I just don't understand how that's okay. I don't think, I disagree with the court's view that the immigration judge departed from the regulation. What the immigration judge did was it said, okay, this is a battery. I'm going to look at, for guidance, I'm going to look at the state statute. Why? Why is that even relevant? Well, it's for guidance. And again, this goes back to Oregon. But how is that relevant? So if somebody is battered in Oregon, they have to go look at some definition for a sentencing statute that has nothing particular to do with, it has nothing at all to do with domestic violence. So the rule would be different in Oregon. It would be different in Idaho. It would be different in Maine. It would be different in Nebraska. I don't understand that. Well, it's relevant to the extent that both parties, at least the petitioner at the immigration judge level, did argue for the common law battery definition to apply. Well, if it does. If it does. I'm sorry. If the common law definition of battery applies, is it a battery? Yes. Okay. Is there a state that takes the position that hitting somebody with a stick without hitting a child with a stick is not a battery? Is there a state that takes that position? I don't believe so, Your Honor. Right. Okay. So under any law, it's a battery. That I know of, under any law. Under common law. Under any state's law. Well, yes. But then the immigration judge. Oh, and you're saying under federal law it's not a battery? No, I'm not saying that, Your Honor. What I'm saying is. Well, then what law is it? What I said. What law is it that makes it not a battery? The definition, the interpretation, the interpretation of the statutory term battery in the immigration statute under the VAWA cancellation provisions. Under that definition, this is not a battery. But counsel, following up on Judge Graber's question, you've got a regulation that defines battery. It's very, very broad. You've conceded, I think appropriately, that under any state definition of battery, a battery occurred here. And yet I hear you saying the fact that the IJ and then the BIA have the ability to construe the regulation in a way that is totally disconnected and we have to give it deference. Is that your position? The regulation itself doesn't tie itself to the common law definition of battery. I understand that. But let's just take the federal definition in the 8 CFR 204.2 sub 6. It's defined there. That's what Judge Graber quoted to you. Very broad. This situation is clearly covered here. So my question is, by what authority does the IJ or, for that matter, the BIA, transmogrify that definition into something wholly unlike that, and in this case they're referring to a California statute. I mean, it's a total disconnect. And unless you can tell me the contrary, I don't think we have this. We don't know the slightest deference to the BIA in such a situation. Well, I think this regulation is prefaced by the terms, includes but is not limited to. That speaks to the board and the immigration judge's discretion to consider. To make it even broader, not narrower. If you say that battery includes the following eight things, that suggests that there might be number 9 and number 10, but it doesn't suggest that it only includes number 2. To me, this is, if you apply what's written here, or if you make it broader, this is battery. It's only if you narrow it, and I see nothing in the regulation or in the statute or in logic that allows the BIA to say, well, that's our regulation, but we're actually going to give less protection than that regulation provides. Your authority, actually, is Lewis Carroll, right? Your authority is words being whatever in Alice in Wonderland, whatever I, the judge, say they mean. No, Your Honor. Even though they have no bearing at all with any other jurisdiction, they mean what I think they mean. No, Your Honor, my authority is Johnson v. United States, which is a Supreme Court case that I 28-J'd to the court earlier this week. Which says nothing about this definition of battery. No, but it does say, it does hold for the principle that you don't use, you don't force terms of art definition to words just because they do have a term of art definition. No, but we're not, I guess my problem is the BIA said, we want to apply our regulation that is in a similar context, and here's our regulation. So far, so good. The BIA is perfectly entitled to have a regulation in one context and say, well, it looks by analogy like it should apply here. So far, we completely owe deference. But then they just don't do it at all. And that's the part that I think just doesn't match up for me. It's not really telling them they can't have a regulation, it's telling them they have a regulation, they have to apply it. But the immigration judge did apply it when he said that there is no injury. What you testified to, I believe what you testified to, but when I'm weighing the evidence and deciding how much weight to give to that evidence, it seems to me that there's no evidence in the record of any injury. That's actually not what, that's not, I disagree with your reading of what the immigration judge did. But if the BIA had gone through the definition in the statute piece by piece, it would have had to come to a different answer. Because the board specifically says the immigration judge noted that responded not, did not testify that her sons ever required any formal medical treatment. I know that, but it's not in the definition. No, but it goes to the severity of the harm. But it doesn't say severe battery. I mean, it does say extreme cruelty, but it says battery. It does. It says battery. And the definition given by the IJ was that what we mean by battery is an injury which requires medical treatment. That's what you're saying. That's what you're saying. We just wonder. That doesn't require it, but it's sufficiently severe. Well, how do we know? Not necessarily. Oh, well, we know there was injury. Yes. So it has to be of such severity that it would require medical injury. Right. The regulations don't specifically require that the person had actually sought medical treatment. And the only source for that requirement, which the IJ and the BIA have put on here, where these children actually did suffer physical injury that required home remedies, ointments and ice and various other things, they were hurt. They didn't go to a doctor. This doctor requirement comes out of a California statute that has nothing whatsoever to do with the definition of battery or the definition of domestic violence. But I think the immigration judge was using that as a touchstone to determine the level of severity. It's contrary to the regulation. But the regulations actually tell when it lists a 204.3C, 204.2 or 3. 2.C16. Right. But it lists the types of prima facie evidence that an applicant for VAWA cancellation is encouraged to submit in order to meet the burden of proof. But that just completely inverts the normal rule and the role of regulations, and certainly as to our deference. And it also seems to ignore a well-known fact, which is when you have a situation where children and or a spouse are being battered, they frequently don't seek help either from the police or the hospital because they fear, number one, that their economic support will disappear, and number two, they might suffer more abuse. So the very idea that you have to have a medical treatment is totally contrary to the literature. It's contrary to the regulation. It's contrary to common sense, isn't it? I'm not saying, and the regulations don't require that medical treatment has to have been sought. And the regulations clearly don't require that, right? Exactly. No, and that's in the legislative history. And all of us are saying, if I may so say, is that we don't know where that comes from. I mean, it's inside the California statute, but on what authority? And on what deference, if any, do we owe the IJ for that leap of faith? Because the regulation says that it results in physical or mental injury. Or threatens to result in. It does not, which makes the requirement of medical treatment even more bizarre because the regulation says that you're the victim of battery if an act of, or perhaps extreme cruelty, if an act of violence threatens to result in physical or mental injury. But I think when you say threatens to result, that goes to the inquiry regarding extreme cruelty, the non-physical acts. No, it doesn't say that. The regulation defines battered by or was the subject of extreme cruelty. Exactly. Both. So to say that medical treatment is required, it just doesn't track. But this court in Hernandez specifically made a distinction. Battery is all physical acts. Extreme cruelty is all non, something other than physical nature, assault of battery. But here we're talking about physical, very clearly physical. Right. And that's why the threatened to result in injury goes to extreme cruelty. No, it goes to, not according to the regulation that Judge Graver cited. Right. No, I think it does because the regulation speaks in the disjunctive. It doesn't speak in the conjunctive. But the part about threatened is on the battery side of the conjunctive phrase, is it not? Well, no, but the definition is of the battered by or was subject to extreme cruelty. So there seems to be some confusion. Maybe it's a very good idea that the circuit comes out and says exactly what's meant by battered. Because we seem to have a fair amount of confusion on that issue, where these judges just go off and tie things to things that ought not to be tied to. Well, let me make clear what the government's position is. The government's position is that the court has the jurisdiction to determine, over the legal question of whether the board and the immigration judge have the authority to not apply the legal definition of battery in interpreting the immigration statute, the vowel cancellation provisions of what is battery. And on what authority do you rely for that statement? INA section 242A2D. That's the one that says that the court has jurisdiction over legal and constitutional questions. That's a legal question. Now, under Hernandez. So there's a legal question, what is battery? Yes. Okay. Whether the board can define it. That's fine. Right. Whether the board can define it as something that is other than the legal definition of battery, other than the common law definition of battery for purposes of the vowel cancellation statute. Try to do that. But the government's position as well, even though for Hernandez it's circuit law and it's to the contrary, is that once that answer is made, how the board applies that definition, how the IJ applies that definition, what evidence is deemed credible, how much evidence is weighed in that consideration, that's not subject to review. Well, it's not even before us really in this sense that if we were to hold that the board misunderstood the legal concept of battery, then even opposing counsel says, well, they've got a lot of other issues they need to deal with here. I mean, they've never looked at it. So everybody agrees that regardless of how we come out, I mean, obviously, if we denied the petition, there would be nothing further. But if we granted the petition and said this is what battery means as a matter of law in this context, everybody agrees it has to go back. Unless the court agrees with the immigration judge and the board's definition that it doesn't have to be that the definition under the vow of cancellation statute is not bound by the common law definition of battery. If that's the case, if the court agrees that the board has that discretion, then that's the end of the matter because then how would it apply? I think we understand your position. Okay. Unless the court has any further questions on the other issues, we ask that the petition be denied. Thank you. Mr. Adams, you have some very brief rebuttal time remaining. Thank you. Just two quick points. As noted, the language of the regulation is very broad. In fact, there's another sentence later on that says that even acts that in and of themselves may not initially appear violent but may constitute if they're part of an overall pattern of abuse. And certainly vow was implemented to help avoid the escalation of violence. And then with regards to deference, there would only be deference if there was an ambiguous statutory term. We would argue that battery is not ambiguous. There's a long common law history. And even if there were an ambiguous term, it would then require that the agency come out with a published decision, and certainly none of that is in place for the agency to assert that. On that regard, I guess I'm a little baffled. If we stopped with the first paragraph of what the agency did here, which is to say we have a regulation in a similar context, and here's the definition, is there anything wrong? You haven't really challenged the propriety of that regulation. No, we don't challenge the propriety of the regulation. We think as Hernandez versus Ashcroft made clear, that regulation encompasses a broad range of conduct including law and battery. I guess I don't even, so we wouldn't, your position is not saying that we have to reject the idea that the BIA can define this. You're just saying they didn't live by their definition. Our position is that insofar as the agency reads a restrictive reading of this regulation, it defies the plain language of the statute, which requires nothing more than battery. I think this case, I mean, it's surprising. Well, the regulation doesn't either. I guess that's why. The regulation, it doesn't specifically state that it's a common law definition of battery, but we think if the regulation is read more restrictive than that, then it does violate the plain language of the statute. Okay, I think I understand your position. Thank you. Thank you, counsel. We appreciate the arguments of both counsel in this very challenging case. It is submitted and will stand adjourned for this morning.
judges: Breyer, Graber, Smith M.